(LOCAL LAW.)

AMMIDON *v.* SMITH ET AL.

Under the laws of Rhode-Island, a discharge, according to the *act for the relief of poor prisoners for debt*, although obtained by fraud and perjury, is a *lawful discharge*, and not an *escape;* and, upon such a discharge, no action can be maintained upon a bond for the liberty of the prison yard.

THIS was an action of debt brought by the plaintiff against the defendant, in the circuit court of

1816.

Ammidon
v.
Smith.

Rhode-Island, on a bond dated the 31st day of August, 1810, with a condition, that if Simon Smith, a prisoner in jail, at the suit of the said Philip Ammidon, shall " continue and be a true prisoner in the custody, guard, and safe keeping of Roger Allenton, keeper of the said prison, &c., within the limits of the said prison, until he shall be lawfully discharged, without committing any manner of escape, or escapes, during the term of his restraint, then this obligation to be void," &c.

The defendants pleaded, severally, two several pleas—

First. That said Simon did remain a true prisoner until lawfully discharged, and made no escape.

Second. That, after notifying his creditors, he did take the oath provided by the law of the state of Rhode-Island, for the relief of poor prisoners confined for debt, before proper authority, which oath is as follows : " that he had not any estate, real or personal, in possession, remainder, or reversion, over ten dollars, and that he had not, since the commencement of the said suits against him, or at any other time, directly or indirectly, sold, leased, or otherwise conveyed, or disposed of to, or intrusted any person or persons whomsoever with, all, or any part, of the estate, real or personal, whereof he hath been the lawful owner or possessor, with any intent or design to secure the same, or to receive, or to expect any profit or advantage therefrom for himself or any of his family, nor had he caused, or suffered to be done any thing whatsoever whereby any of his creditors may be defrauded."

To the first plea the plaintiff replied, that he did not remain a true prisoner until lawfully discharged, &c. To the second he replied, that, after the commencement of the action, on which he was imprisoned, and after the contracting of the debt on which the action was brought, the said Simon was seised and possessed of real estate to the value of 40,000 dollars, and that, fraudulently contriving with his sons Darius and Simon, jun., his sureties in said bond, to defraud him of his said debt, did lease, sell, and convey to said Darius and Simon, jun. and his other children, all his said real estate, and did intrust them with it, for his and their benefit, with intent to defraud the plaintiff, and that he might be admitted to the benefit of the oath mentioned in said plea; that said Simon did intrust with said Darius and Simon, jun. and his other children, all his estate, both real and personal, of the value of 50,000 dollars, with the advice, counsel, and assistance, and under the direction of said Darius and Simon, jun. and his other children, with an intent and design to secure the same to the said Darius and Simon, jun. and his family, to defraud the plaintiff of his said debt; and he avers that the said Simon did falsely and fraudulently take said oath, with intent wilfully, falsely, and fraudulently to hinder, delay, and defraud the plaintiff of his just debt aforesaid, and avoid the payment thereof, and thereby hinder, delay, and defraud the other creditors of the said Simon of their just debts. And this he is ready to verify, wherefore he prays judgment, &c. In his replication to

the pleas of the two sureties, the plaintiff adds an averment, that the said Simon took the said oath, they, the defendants, well knowing that the same was false and fraudulent; and that the said Simon did wilfully, falsely, and fraudulently take the said oath with intent thereby to hinder, delay, and defraud the plaintiff of his just debt aforesaid, and avoid the payment thereof, and thereby hinder and defraud the other creditors of the said Simon of their just debts.

To this replication the defendants demurred, and the plaintiff joined.

On the argument of this demurrer, the judges of the circuit court were divided in opinion, whether the replication was sufficient to avoid the plea, which division of opinion was certified to this court.

*Pitkin,* for the plaintiff.  The question is, whether the fraudulent conduct of the defendants, as stated in the pleadings, can be taken advantage of in a suit on the bond.  The laws of Rhode-Island allow persons imprisoned for debt on mesne process, or execution, the limits of the prison, on giving a bond to the creditor to remain true prisoners until lawfully discharged.  Debtors, having no estate, who take an oath that they have not any estate over 10 dollars, and that they have not disposed of any part of the estate of which they were possessed, for their own benefit, or that of their families, or with intent to defraud their creditors, may be discharged from jail; but if confined on execution, the debtor must leave with the keeper, to be delivered to his creditor, his

promissory note, payable to such creditor, for the amount of the debt, in two years, with interest.[a]  In this case the debtor was released from prison by the forms of law ; but this discharge being obtained by fraud and perjury, is wholly inoperative, and a departure from the limits under colour of such a discharge, is, in law, an escape, and a breach of the condition of the bond.  Fraud vitiates every act ; and this axiom of jurisprudence is consecrated by the laws of Rhode-Island, which provide, " That if any such prisoner aforesaid shall be convicted of having sold, leased, or otherwise disposed of, or intrusted his or her estate, or any part thereof, directly or indirectly, contrary to his or her aforegoing oath, or affirmation, he or she shall not only be liable to the pains and penalties of wilful perjury, *but shall receive no benefit from said oath or affirmation.*"[b]  The word " convicted," could not have been used here *technically*, but merely to declare, that if any person should swear falsely as to the disposition of his property, he should not only be liable for perjury, but should receive no benefit from such false swearing.  Any other construction would defeat the object of the statute.  The laws of the state contain a similar provision respecting debtors obtaining the benefit of the insolvent act ; yet it has never been held, that the fraudulent debtor must be first criminally convicted in order to give effect to this provision.

*Hunter,* contra.  1. The discharge was obtained

a *Digest,* p. 227.    *Supplement,* p. 73.
b *Digest,* p. 231.

by a court of competent jurisdiction, and is, therefore, of complete obligation. The decision in the present case was not only that of a court of competent jurisdiction, and, therefore, conclusive, but it was in terms and effect a decision upon the very point now in controversy, and between the same parties. The statute is solicitous to prevent fraud, and for that purpose allows to the party creditors a right to show the probability that a perjury is intended, and by that means a fraud may be perpetrated, and applying to the conscience of the debtor, imposes on him an oath of detailed, explicit, and unequivocal purgation. The present plaintiff has no right to complain; though duly summoned, he did not appear, and his contumacy has forfeited his right of action. There is no principle of our jurisprudence more firmly settled, more reasonable and salutary, than that a party shall not be permitted to turn his own omissions into a charge upon another. Even a court of chancery will refuse relief against fraud, if it be obvious that it might have been urged by the complainant as matter of defence in a previous suit at law.[c] The discharge of the defendant is said to be invalidated by conveyances previously made by him. But of these conveyances the plaintiff had notice; the law requiring them to be recorded, and the plaintiff admitting that he had actual notice. If, then, these deeds constituted the fraud, the defendant had notice of the fraud, and ought to have ap-

c 1 *Johns. Cas.* 392. Le Guen v. Gouverneur & Kemble. 2 *Burr.* 1009. 7 *T. R.* 269. 2 *H. Black.* 414.

peared *to* oppose the discharge. Knowing the defendant not to be entitled to it, he stands by, and permits him to obtain it, with an intention to convert a bond, meant as a substitution for the prison walls, into a pecuniary security for his debt, and 30 *per cent. in addition.* The plaintiff's conduct is thus analogous to a permissive escape at common law, where neither the creditor nor the sheriff can retake the prisoner even in a fresh suit. 2. Considering this as a question upon the construction of the bond, no breach of its condition can be inferred. Such a breach imports an *actual* wrongful escape; such as at common law would give the sheriff a right of recaption—such as would subject him to an action, and the prisoner to an indictment. The phraseology of the bond in that of the common law, and the definition of the correlative phrases "escape" and "true prisoner," are exact, invariable, and immemorial. *That* can never be an escape where the prison doors are opened by the hand of the law. *He* must have remained a true prisoner whose remaining a single moment longer, by restraint, would have subjected his keeper to an action for false imprisonment. *Escape,* according to the definition as ancient as Rastel in his *Terms dey Ley*, and adopted by *Saundf.* P. C. cap. 26., and all the subsequent writers, means a violent or privy evasion of some lawful restraint. It is a solecism in language to say, that a discharge and enlargement by a court is an escape; for, if the court has jurisdiction, the sheriff cannot judge of the validity of the process and other proceedings of such.

court, but must obey.[d] By the *ancient* common law, prison breaking, either in a criminal or civil suit, was felony, and it is still an indictable offence.[e] Can it be pretended that the prisoner could be convicted of this offence? or that our jurisprudence is so inconsistent as to present a different result on the same question, merely because the forms are conducted by a civil and not a criminal procedure? 3. The plaintiff has mistaken his remedy, and the mistake proceeds upon a violent attempt to convert a contract that a man shall not escape, into a guarantee for the payment of money. Undoubtedly, the general policy of the law is, to compel payment from the debtor by the imprisonment of his body; but its rigour has been mitigated by statute, which permits him to see the light of heaven, and breathe its genial air, upon giving security that he will not abuse this privilege by a forcible or privy escape. This is all the sureties engage for; their contract is prospective only; and if the prisoner has previously made himself poor, by voluntary conveyances, it has no relation with their obligation. In this case the creditor's remedy is not upon the bond, for the original debt remains; the contract is unimpaired. There is a renewal—a *novation*, as the civil law terms it, of the debt. The prisoner is obliged to give his promissory note for the amount of the execution, with interest; and his enlargement may, even then, be prevented by the creditor, by paying one dollar a week for his support in prison. In or-

d *Moor*, 274. 1 *Dyer*, 66.　　e 2 *Inst.* 509. *Cro. Car.* 210.

der to extinguish the original debt, and create a re-
medy upon the bond, the prisoner must be convicted
of the fraud by a criminal process. Until that is
done, his oath is taken for truth; it is the medium
of proof, and its substitute, as in cases of usury, or
in the action of book account, or book debt, which
prevails in the eastern states, where the oath of the
party to his original entries is *prima facie* evidence
to enable him to recover. If the prisoner be con-
victed of perjury, the sentence would proceed to va-
cate all the proceedings consequent upon the fraud./
All the cases under the stat. 27 *Eliz.* c. 4. s. 7., and
other like statutes, from *Twine's case*, soon after the
enactment of the statute, down to the case of Meux
v. Howell, (4 *East*,) exhibit the same combination of
civil and criminal procedure. The insolvent law of
Rhode-Island of 1756, and the statute under which
this bond was taken, are alike. That law is mostly
a transcript of an English statute passed the year
before, which act was one of those temporary insol-
vent laws which have been passed, from time to
time, since the original act of Charles II., made prin-
cipally, in consequence of the great fire of London.
It is not probable, then, that the word " conviction,"
in this law, was used in any other than its technical
and correct signification of a conviction in a court of
criminal judicature. Such a conviction would be
conclusive evidence of the fact, if it afterwards came
in question in a court of civil jurisdiction. The
plaintiff may pursue his remedy in a court of com-

---

*f* Hubert's case, *Cro. Eliz.* 531. 12 *Rep.* 123.

1816.

Ammidon
v.
Smith

mon law, or in chancery; or, he may resort to the legislature of Rhode-Island, which, by the peculiar institutions and usages of that state, possesses the power of nullifying the proceedings of the ordinary courts of justice. There being no written constitution, its sovereignty is limited by nothing but its federal compact with the United States; and in the exercise of its residuary sovereignty, it is like the British parliament, in a legal sense, omnipotent.[g] 4. But this case is settled by that of Simms & Wise v. Slacum,[h] which is undistinguishable in point of principle, and the minute differences between the law of Virginia and that of Rhode-Island strengthen and illustrate the main principle of decision.

*Pitkin*, in reply. The discharge cannot be conclusive, because the proceedings are summary, and founded entirely on the debtor's oath; from the determination of the magistrates no appeal lies, nor can they grant a new trial. The prison doors were not opened by the hand of the law, but by a fraud upon the law. In the case of Simms v. Slacum, the court held that if the surety had combined with the magistrate, in order to procure the discharge, he could not set it up, by way of defence, to an action on the bond. By the laws of the state, perjury is punishable by three years' imprisonment; but this punishment could not be inflicted, if a civil sentence

*g* As to the power of parliament, see *Lord's Journals*, vol. 1., p. 191. *Common's Journals*, vol. 8., p. 344. Sir Edward Powell's case.

*h* 3 *Cranch*, 307

is, at the same time, to be pronounced, that the party shall return to the debtor's prison. Neither an action at law, nor a suit in chancery, can enforce the plaintiff's just rights upon the lands conveyed, in the hands of *bona fide* purchasers. Nor can the case of Simms v. Slacum be considered as decisive of the present, since the provisions of the two statutes are so different, and the point did not come up directly in that case; but when it was again brought before the court, upon a special verdict, the principles settled were favourable to the present plaintiff.[i]

MARSHALL, Ch. J., delivered the opinion of the court, and, after stating the facts, proceeded as follows:

March 21st.

The act of the legislature of Rhode-Island, on which this case depends, enacts, " That it shall and may be lawful for the sheriffs of the several counties, to grant to any person imprisoned for debt, a chamber in any of the houses, or apartments, belonging to such prison, and liberty of the yard within the limits thereof, on his giving bond to the creditor, with two sufficient sureties, in double the amount of the debt, with condition to remain a true prisoner until lawfully discharged, and not to escape. And in case the creditor shall put the bond in suit, and recover judgment thereon for breach of the condition, he is to recover his debt with thirty per centum on the principal sum for his damages;" and the principal, and his sureties, shall be committed to close

*i 5 Cranch, 363.*

jail until the judgment be paid. The law, then, prescribes the manner in which a poor prisoner may obtain his discharge. On application to any judge of the court of common pleas, or justice of the peace in the county, notice is to be given to the creditor to appear at such time and place as the judge or justice shall appoint, to show cause why the prisoner should not have the benefit of the act. Any one judge of the court of common pleas, and any one disinterested justice, are then authorized to administer the oath prescribed in the law ; " if, after fully examining and hearing the parties, the said justices shall think proper so to do." A certificate being given to the jailer, the prisoner is to be discharged, on leaving with the jail keeper, to be delivered to his creditor, his note payable to the creditor in two years, with interest, for the amount of the execution. It is then enacted, that if any such prisoner shall be convicted of having sold, leased, or otherwise concealed, or disposed of, or intrusted his or her estate, or any part thereof, directly or indirectly, contrary to his or her oath, or affirmation, he, or she, shall not only be liable to the pains and penalties of wilful perjury, but shall receive no benefit from said oath or affirmation.

The question to be decided by this court is, whether a prisoner obtaining a discharge according to the forms of law, by means of fraud and falsehood, has broken the condition of his bond.

There is so much turpitude in the act confessed by the demurrer, such reluctance to allow any man to avail himself of so flagitious a defence, that it is

not without some difficulty this question can be considered as a naked point of law. It is, however, the duty of the court so to consider it; and this has been attempted.

The object for which this bond was given is of decisive importance in the inquiry respecting the extent of the obligation it imposes. It is, certainly, not given for the purpose of improving the security of the creditor, but simply for the purpose of allowing the debtor the benefit of the prison yard, without impairing the right of the creditor to the custody of his person. The yard, and a comfortable chamber, are substituted for the walls of a jail; but as this substitution would facilitate an escape, it was deemed reasonable to secure the creditor against the abuse of an indulgence which the humanity of the law afforded. This consideration would suggest the propriety of provisions against an actual escape, the means for making which were furnished by allowing the use of the prison yard; but not against the employment of fraud or artifice to obtain a discharge, in the manner prescribed by law, which may be employed in jail as well as in the yard, and the means of employing which are not in any degree facilitated by substituting the yard for the walls of the jail. The condition of the bond is, to remain " a true prisoner, until lawfully discharged, without committing any escape, or escapes, during the term of his restraint," and the certificate is a mode of discharge prescribed by law which terminates " his restraint." If, as is conceived, this bond was intended to guard against the dangers created

by allowing the prisoner the liberty of the prison yard, not against a fraud already committed, which is entirely unconnected with the bond, and the enlargement of his limits; then it is not broken by the practice of such fraud. The persons perpetrating it are, in a high degree, criminal, and ought not to be permitted to avail themselves of such conveyances. The jurisprudence of Rhode-Island must be defective indeed, if it does not furnish a remedy for such a mischief. The replication charges these conveyances to have been executed by the defendant, pending the suit, for the purpose of defrauding the plaintiff, of defrauding his creditors generally, and of enabling himself to take the oath of an insolvent debtor. It further charges, that after the execution of the bond, the false oath was taken with the knowledge of the sureties. However criminal this act may be, it cannot be punished by extending the obligation of the bond, on which this suit was instituted. The judgment rendered by the magistrates was obtained by perjury, but the discharge of the prisoner, which was the consequence of that judgment, was in the course of law, and is not deemed an escape.

This question appears to have been considered by the court in the case of Simms et al. v. Slacum; and although the question was not there decided, because in that case the sureties alone were sued, and did not appear to be concerned in the fraud of their principal, yet the reasoning of the court certainly applies to this case. The decision in the case of Simms et al. v. Slacum has been revised, and the court feels no

disposition to depart from it. The reasoning it contains need not be repeated, but is considered as applicable to this case.

There is some difference in the provisions of the two statutes, but not enough to induce a different construction as to the extent of the obligation of the bond for keeping the prison rules. The law of Rhode-Island enacts, that if any prisoner shall be *convicted* of having disposed of any part of his estate, contrary to his oath or affirmation, " he shall not only be liable to the pains and penalties of wilful perjury, but shall receive no benefit from said oath or affirmation." *Conviction* is a technical term applicable to a judgment on a criminal prosecution, not to a proceeding on this bond. The act contemplates a prosecution on which the party may be adjudged to suffer the penalties of perjury, in addition to which he is to be deprived of all benefit from the oath or affirmation. If this section has any influence it would be to show that in the contemplation of the legislature such conviction is necessary previous to the establishment of the absolute nullity of the oath or affirmation. The court, however, does not mean to indicate that the effect of the oath and of the discharge granted by the magistrates might not be controverted in any proceeding against the parties, either in law or equity, other than in a suit on the bond for keeping the prison rules.

CERTIFICATE.—This cause came on to be heard on the transcript of the record from the circuit court for the district of Rhode-Island, containing the points

on which the judges of that court were divided in opinion, and was argued by counsel. On consideration whereof this court is of opinion that the replication of the plaintiff is insufficient to avoid the plea of the defendant. All which is ordered to be certified to the said circuit court.