GEORGE EVERETT *vs.* EDWIN P. HENDERSON & another.

Suffolk. November 10, 1887. — January 10, 1888.

Present : MORTON, C. J., FIELD, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Arrest on Execution — Affidavit — Recognizance — Malicious Prosecution.*

The legality of an arrest on execution made in due form, and the validity of a recognizance thereupon entered into, cannot, in an action on the recognizance, be questioned as founded on a false affidavit; but the only remedy is by an action for malicious prosecution.

In an action on a recognizance entered into by a poor debtor under the Pub. Sts. c. 162, § 28, upon his arrest in due form, the defence that the affidavit of the creditor was wilfully false, and that the certificate of the magistrate thereon was got by fraud and perjury, is not open, and will not avoid the recognizance.

CONTRACT on a poor debtor's recognizance, entered into by the first-named defendant as principal, and by the other defendant as surety, and containing the usual conditions.

At the trial in the Superior Court, before *Mason,* J., it appeared that the plaintiff duly recovered judgment against Henderson in the Municipal Court of the city of Boston, on May 29, 1884, and that execution duly issued on the judgment, but was returned in no part satisfied, and without service. On September 3, 1884, an alias execution on the judgment duly issued, and on September 8, 1884, the plaintiff made an affidavit, in due form of law, before Edward J. Jones, a master in chancery, that he believed, and had good reasons to believe, that Henderson " has property not exempt from being taken on execution, which he does not intend to apply to the payment " of the claim ; and that Henderson " contracted the debt with an intention not to pay the same." Thereupon Jones, upon an *ex parte* hearing, granted a certificate " that, after due hearing, I am satisfied there is reasonable cause to believe that the charge made in the said affidavit is true ; and satisfactory cause having been shown, I hereby authorize the arrest of the said debtor on the annexed execution "; and annexed the affidavit and certificate to the alias execution.

On November 1, 1884, Henderson was arrested in Boston by an officer duly qualified to make the arrest and serve the execu-

tion, and carried before Edward J. Jenkins, a commissioner of insolvency, before whom he gave the recognizance.

On November 24, 1884, Henderson duly gave notice of his intention to take the oath for the relief of poor debtors, before Henry W. Bragg, a master in chancery, and several hearings were had. On March 7, 1885, pending the examination, the plaintiff duly filed before Bragg charges of fraud, among which was the one sworn to in the affidavit, and hearings were had on such charges. The hearings on the charges of fraud were continued from time to time, and finally to April 18, 1885, at one P. M., at which time the plaintiff and Henderson appeared and remained during the whole hour, and after the lapse of the hour the plaintiff, before the appearance of the magistrate, departed. The magistrate, Bragg, was not in attendance within the hour, and did not appear and attend until a quarter past two o'clock, nor did any other magistrate attend in his place, and there were no further adjournments or proceedings had.

The defendants contended that the affidavit was made by the plaintiff falsely, fraudulently, and without probable cause, and that the plaintiff did not, at the time he made it, believe or have good reason to believe the affidavit to be true. The plaintiff, before any evidence was offered by the defendants, asked the judge to rule that no evidence could be offered or introduced in this action to control or affect the affidavit, or to show that the affidavit was false, fraudulent, or made without probable cause, or that the plaintiff did not believe, or had no good reason to believe, that the affidavit was true; but the judge refused so to rule, and admitted evidence to show that the affidavit was false and fraudulent, and made without probable cause, and that the plaintiff did not believe, and had no good reason to believe, the affidavit to be true at the time of making.

The judge instructed the jury, that the burden of proof was upon the defendants to establish the defence of fraud, and it must be proved affirmatively; that it was not sufficient to show that Henderson intended to pay the debt when he contracted it, nor that the plaintiff when he made the affidavit had no good reason to believe that Henderson did not intend to pay the debt when he contracted it; that, while it was necessary for the defendants to prove both these propositions, they must go further,

and prove that the plaintiff did not believe the affidavit when he made it, and that it was in fact a corrupt affidavit; that if the defendants proved all this, and that the magistrate's certificate authorizing the arrest was obtained by the fraud and perjury of the plaintiff, the plaintiff could not avail himself of the arrest thus obtained as the foundation of his cause of action, but as between the plaintiff and these defendants the arrest and recognizance would be void, and their verdict should be for the defendants; but that if the defendants had not sustained the burden of proof, and established wilful fraud and perjury on the part of the plaintiff, their verdict should be for the plaintiff in the penal sum named in the recognizance.

The jury found for the defendants; and the plaintiff alleged exceptions.

*E. M. Bigelow*, for the plaintiff.

*C. G. Keyes*, for the defendants.

KNOWLTON, J. The defendants contend that the recognizance declared on cannot be enforced, because the proceedings in which it was taken were founded upon a wilfully false affidavit of the plaintiff. The act imputed to the plaintiff involves such moral turpitude, that we cannot permit him even temporarily to profit by it, unless upon principle as well as authority our duty is clear.

The wrong complained of, so far as it affects the question before us, was like an ordinary malicious prosecution of a groundless suit. The proceedings for the arrest of the defendant Henderson were in the nature of a new prosecution. They were for the purpose of obtaining a remedy which was not available without them. The statute provides that they "shall be considered in the nature of a suit at law." Pub. Sts. c. 162, § 49. They were founded upon allegations of fact, heard at first *ex parte*, which, if issue was taken upon the arrest, were afterward to be regularly tried between the parties, with a view to an adjudication which should give or withhold the remedy sought. It is admitted that the affidavit was proper in form and substance, that the magistrate had jurisdiction to act upon it, and that he judicially found the facts alleged in it to be true, and signed a certificate authorizing the arrest. The arrest was regularly made by a proper officer, and the defendant Henderson was taken

before a magistrate, and there entered into the recognizance in suit. The proceedings being conceded to have been in all other respects legal and proper, it is contended that the known falsity of the plaintiff's allegations in his affidavit rendered the arrest, as to him, illegal, and the recognizance void.

It is familiar law that an officer called upon to serve a process needs only to see that it is good upon its face, and it is not suggested that the conduct of the officer or of the magistrate in relation to this arrest can be called in question. But there are cases in which an officer is protected in making an arrest, when the person who caused it or set the proceedings in motion is liable. If the arrest in this case was legal as to the plaintiff as well as the officer, the recognizance founded upon it was legal also, and can be enforced in this action. If it was illegal as to the plaintiff, he can be sued in trespass for causing it, the process as to him is no justification, and the recognizance is tainted with illegality and is void. We are brought, therefore, to the inquiry, Under what circumstances is an arrest under process illegal, as to the party causing it to be made?

There is no doubt that one who obtains a process and causes it to be served assumes the duty of seeing that it is well founded. He should know that it rests upon a good record, or other proper preliminary proceeding; but so far as the matter depends upon an adjudication by a court or magistrate having jurisdiction, he may rely upon that. Processes good on their face may be absolutely void for want of jurisdiction in the court or magistrate that issues them, or they may be voidable for error, or they may be voidable for irregularity in obtaining them. Processes voidable for error do not subject the person who directs their use to any liability, even after they are set aside. But processes irregularly obtained may be set aside, and then, as against those who obtained them, acts done under them are deemed to have been done illegally. *Cassier* v. *Fales*, 139 Mass. 461. *McGregor* v. *Crane*, 98 Mass. 530. *Barker* v. *Braham*, 3 Wils. 368. *Tarlton* v. *Fisher*, 2 Doug. 672. *Belt* v. *Broadbent*, 3 T. R. 183. *Bates* v. *Pilling*, 6 B. & C. 38. *West* v. *Smallwood*, 3 M. & W. 418. *Collett* v. *Foster*, 2 H. & N. 356, 361. *Chapman* v. *Dyett*, 11 Wend. 31. *Deyo* v. *Van Valkenburgh*, 5 Hill, (N. Y.) 242. *Lovier* v. *Gilpin*, 6 Dana, 321.

In cases of error, the judicial action in which the error is found is a justification for all who have acted in reliance upon it. In *Marks* v. *Townsend*, 97 N. Y. 590, where a process for arrest was set aside for error, it was held that the person who obtained it was not liable, and it was said in the opinion, that if he had known facts which made the arrest improper, and, concealing them, had maliciously made the affidavit and caused the arrest, he would not have been liable for false imprisonment, but only for malicious prosecution. The affidavit seems to have been of matters other than those to be tried in the proceeding then instituted, and against this dictum there are conflicting dicta in other cases. Some judges have intimated that action like that supposed would constitute irregularity, for which the process might be set aside even if there was error also, and that the affiant would then be liable in trespass for false imprisonment. *Williams* v. *Smith*, 14 C. B. (N. S.) 596. *Smith* v. *Sydney*, L. R. 5 Q. B. 203. *Daniels* v. *Fielding*, 16 M. & W. 200.

The cases of irregularity cover a variety of defects in the record, or in other preliminary proceedings. Irregularities do not result from wrong adjudications, and in that respect they differ from errors. But irregularities, whether we include in the term those fundamental defects which go to the jurisdiction and render the process void, or limit it by a stricter definition which will comprise only those upon which the proceedings may be set aside, do not include false allegations of fact, made as a foundation for a suit in which the allegations are to be proved or disproved. And this is equally true whether they are falsely made by mistake or by design.

The remedy for causing an arrest by maliciously bringing a suit upon false charges, or maliciously making a false affidavit, is by an action on the case for a malicious prosecution. *Legallee* v. *Blaisdell*, 134 Mass. 473.. *Luce* v. *Dexter*, 135 Mass. 23. *Baron* v. *Sleigh*, 2 Cro. Eliz. 628. *Daniels* v. *Fielding*, 16 M. & W. 200, 207. *De Medina* v. *Grove*, 10 Q. B. 152, 170. *Sheldon* v. *Carpenter*, 4 N. Y. 578. These authorities imply the negative, that an action of trespass for the arrest or for false imprisonment will not lie. And this point has been directly adjudicated. *Coupal* v. *Ward*, 106 Mass. 289. *Mullen* v. *Brown*, 138 Mass. 114. *Langford* v. *Boston & Albany Railroad*, 144 Mass. 431.

*Wood* v. *Graves*, 144 Mass. 365.    *Daniels* v. *Fielding*, 16 M. &
W. 200.    *Barber* v. *Rollinson*, 1 C. & M. 330.    In each of the
first three of the latter cases the arrest was upon a criminal prose-
cution, and the complainant did not cause it in the same sense as
one causes an arrest who sues out a capias for his own purposes,
and gives it to an officer with directions to serve it.    One who
makes a criminal complaint does not commonly direct the service
of the precept, but from the beginning the control of the prose-
cution is with the officers of the law.    In *Wood* v. *Graves*, *ubi
supra*, in which the arrest was under a criminal warrant, it was
held that the defendants were not liable for false imprisonment
on account of abusing the process by procuring it to be issued for
an improper purpose, and that the only abuse which would render
them liable was an improper use of it after it had been served.
In *Cassier* v. *Fales*, 139 Mass. 461, it is said that "it is difficult
to see how any person can be guilty of a trespass in serving or
causing to be served a valid writ, or other process of a court."
*Lovier* v. *Gilpin*, 6 Dana, 321, 328, was an action of trespass
against the plaintiff in a civil suit, for causing an attachment of
property and assisting the officer in making it.    There was an
offer to show that the process was maliciously obtained, and in
an elaborate opinion, reviewing the cases and holding that the
action could not be maintained, Marshall, J., said: "We have
found no case in which a party who institutes a groundless pro-
ceeding has been held liable as a trespasser for what is done by
his direction, or with his aid, in the regular course of that pro-
ceeding, unless the process under which the act complained of
was done be void, or unless, if voidable only, the process itself, or
the proceeding on which it rests, has been set aside or annulled
before the action of trespass is brought."

The doctrine that the validity of proceedings in a suit at law
cannot be called in question on the ground that it is not well
founded in fact, rests upon important considerations of public
policy.    Every suit involves allegations of fact upon which a
claim is founded.    If the claim is resisted, the truth or falsity of
the allegations is to be ascertained by a trial in the suit itself.
The bringing of the suit is an offer on the part of the plaintiff to
prove them.    All action in the case proceeds upon the theory
that the plaintiff is ready to maintain his claim, and that he may

or may not succeed in establishing it. Every step in the suit is incidental to the purpose for which it is presumed to have been brought, — that of determining whether its allegations are true, and of obtaining a remedy if they are proved. Provisions are made for preserving the rights of both parties. They all recognize that the existence of a just cause of action is in dispute, and is to be regularly inquired into and finally passed upon in the suit itself. Whatever the law prescribes in the course of the proceeding, whether for the security of the plaintiff by way of attachment or arrest, or for the protection of any other interests of either party, may be legally done, and an ultimate decision that the plaintiff was mistaken or wilfully false in the original statement of his cause of action should not render it invalid. And this because there must be incidental acts, oftentimes of great importance and variety, in the litigation of a disputed question; and it is necessary that rights dependent upon these acts should be fixed and stable. Neither the plaintiff, nor any one else connected with the suit, should be called upon by the defendant to try collaterally the questions involved in it.

If, while the suit is pending, it should be attempted to separate the question of the merits of the action from that of the plaintiff's belief in regard to the merits of it, it would be practically impossible to do it. The rule is familiar, that an action for malicious prosecution cannot be maintained until the original suit has first been determined in favor of the original defendant. So long as anything remains open for trial upon the plaintiff's allegations in that, it will be deemed to have been properly brought. When it has been decided in favor of the defendant, he may show, if he can, that it was brought maliciously and without probable cause, and recover damages for the wrong done him.

There is no want of jurisdiction, irregularity, or error to affect any of the proceedings in a suit brought in due form, on a maliciously false statement of a claim. The only questionable element in it relates to that which must be uncertain in every case, the validity of the plaintiff's claim, and his belief in regard to it. When the uncertainty as to which of the parties is right is eliminated at the trial by a verdict for the defendant, or the case is otherwise ended in his favor, and an action for malicious

prosecution is brought, the former proceedings cannot be set aside, and are not rendered invalid.

In an action for malicious prosecution damages may be recovered for all the injury which resulted directly from bringing the suit, and from the measures regularly adopted in conducting it. It would be an anomaly if one could recover in such an action, and recover also in trespass from the same defendant for an arrest regularly made as a part of the same prosecution; or if an attachment of property, or any other incidental act from which damage resulted, could be made a separate cause of action, on the ground that it was illegal as against the original plaintiff who caused it; — much more if, before the termination of the original suit, one who as recéiptor had contracted with an officer to return attached property on demand could answer the officer's suit for the goods by alleging that the attachment was illegal as against the original plaintiff because the suit was maliciously brought; or if the officer himself could make a similar answer to a suit by the plaintiff for negligence in the performance of his duty in relation to an attachment.

If in the case at bar the arrest was not illegal as against the plaintiff, there was no defect in the recognizance. It was for a good consideration, and was entered into in due form, in accordance with the statute, before a magistrate having jurisdiction. Moreover, under our law it became the only security of the plaintiff, and stood in place of the judgment and execution. *Brown* v. *Kendall*, 8 Allen, 209, 210. *Morgan* v. *Curley*, 142 Mass. 107. It was perfect unless tainted with illegality. But the same considerations that show the arrest to have been regular and legal apply to this also. Indeed, this having been entered into voluntarily by the defendants, the only illegality to affect it must be sought for in the arrest which preceded it.

And it cannot be truly said that the reasoning applicable to arrests or attachments upon ordinary suits maliciously brought is inapplicable to this arrest upon execution. For the affidavit was a statement of matters which if true entitled the plaintiff to prosecute and maintain his suit in this way. The charge of fraud was the foundation of the new proceeding. It was a charge upon which the defendant could plead not guilty, and demand a trial, which would determine the ultimate rights of

the parties. That trial could be had quickly, and the statute contemplated that both parties should proceed regularly in the mode prescribed, to ascertain the truth or falsity of the facts alleged, as they are required to do in any suit at law. The fact that an issue in relation to the pecuniary condition of the defendant was also triable is immaterial. Every reason why arrests and attachments made in suits upon maliciously false declarations should be held legal, can be urged in support of the legality of the arrest in this case.

This case does not fall within the principle of numerous cases in which it is held that one shall not be permitted to take advantage of his own wrong. It is true that an arrest which is accomplished by means of an unlawful act, like breaking a dwelling-house, is void. But in these cases there is illegal action which precedes or accompanies the use of process, and is outside of it, and which leads directly to the arrest, and enters as an element into it. In the case at bar the arrest was not directly caused by an unlawful act. The plaintiff had no connection with it except through the process which he ordered served according to its precept. He made a statement under oath, which showed a proper case for an arrest, and a trial in the manner prescribed by law. The magistrate in a preliminary hearing acted judicially upon it, and gave his certificate of authority. Making a statement in such a case is in itself a lawful act; and a process regularly issued upon it, under which the statement may be further passed upon, is a lawful process. Illegality and fraud taint the statement, but not the process. That is good in law, whether the statement be true or false.

So where unlawful acts have been done in obtaining an attachment of property, like taking possession of it on Sunday, or fraudulently inducing the owner to bring it from a State where it cannot be attached to one where it can, there has been an element of wrong other than in the cause of action upon which the writ was procured. *Parsons* v. *Dickinson,* 11 Pick. 352. *Ilsley* v. *Nichols,* 12 Pick. 270. *Deyo* v. *Jennison,* 10 Allen, 410. In each of the cases cited there was fraud or misconduct in regard to the property before it was taken under the writ, which made it unlawful for the plaintiff to attach it. The writ of replevin referred to in *Pine* v. *Morrison,* 121 Mass. 296, was not between

the parties to that suit, and did not present for trial the issue presented in that. In *Crocker* v. *Atwood*, 144 Mass. 588, the fraud was not solely in stating a fictitious claim. The attachment of a particular article of personal property does not ordinarily follow from merely suing out a writ of attachment. Besides obtaining the writ, the plaintiff, in the original case to which *Crocker* v. *Atwood* relates, " caused the property to be taken on the attachment," and this he did with a fraudulent purpose to deprive the defendant of his rights in it. The case merely holds that other fraud may be taken advantage of, notwithstanding that there was a malicious prosecution.

A distinction has sometimes been suggested between illegality as a ground for a suit, and illegality which can be availed of in defence against the claim of another. But no such distinction exists in cases like that at bar. If the arrest was illegal as against the plaintiff, it was so as well for the purpose of sustaining a suit against him for his wrong as for defeating an action brought upon the recognizance. In *Ammidon* v. *Smith*, 1 Wheat. 447, it was held that the fraudulent taking of an oath by a person under arrest on a civil process, and the obtaining of a release thereby, did not constitute an escape, nor charge the sureties in a suit upon his bond for the prison limits, even though they participated in the fraud. That too was a case in which the oath taken was not the foundation of proceedings for the purpose of trying the allegations contained therein. See also *Smith* v. *Quinton*, 2 Bray. (Vt.) 200.

If the validity of legal proceedings could be tried collaterally before the termination of the suit, on the ground that a false cause of action was maliciously stated, or that a false affidavit for arrest was maliciously made, a defendant whose property had been taken might sue for an injunction against the attaching officer. A defendant arrested, instead of trying the facts charged in the affidavit, in the manner prescribed by law, might apply for release upon habeas corpus, or, after a trial upon the charges before a magistrate, and at any time before final judgment in the Superior Court, if he saw he was likely to be convicted, he might make default, and set up, as the defendants have done in this case, the falsity of the affidavit in defence to the supplemental suit upon the recognizance. With such a rule there

could be no regularity in procedure, and no certainty as to the value of any security.

In a case of this kind there is no hardship in leaving a party to existing remedies. He may, first, obtain under the statute an early hearing of the matters alleged against him, and secondly, . after the case is ended, he may, if the facts will warrant it, bring his action for a malicious prosecution.

If this remedy is not now available to the defendant, it is because of neglect or misfortune for which he is legally responsible. It was his duty to have a magistrate present to hear or continue the case at the time to which the hearing was adjourned. His neglect of that duty was a breach of his recognizance. Whether, with such a termination of the proceeding, he can now bring a suit for malicious arrest or prosecution is a question which is not before us. In *Fortman* v. *Rottier*, 8 Ohio St. 548, it was held by a majority of the court, that an action for malicious prosecution could be maintained for procuring an attachment upon a false affidavit, without first getting the proceeding set aside. And in *Bump* v. *Betts*, 19 Wend. 421, a similar decision was made, where property was attached and a judgment *in rem* obtained upon a false and malicious affidavit that the defendant had absconded. But in both of these cases it seems that the affidavits were not of matters which were to be tried in the regular course of proceedings instituted by them, and in that respect they differed from that in the case at bar.

Inasmuch as the jury were permitted to find for the defendants upon a defence which was not properly open to them, the entry must be                         *Exceptions sustained.*