## CHICAGO, R. I. & P. R. CO. v. GRACE.

No. 7624—Opinion Filed July 25, 1916.

Rehearing Denied Sept. 26. 1916.

(159 Pac. 1011.)

1. **Carriers—Carriage of Passengers—Actions—Recovery.**
The rule of contributory negligence as well as section 1423, Rev. Laws 1910, under the conditions therein stated, ordinarily preclude a passenger who is injured while riding upon the platform of the caboose of a freight train from recovering for such injury, but when the freight train upon which a passenger is riding stops, and the passenger reasonably believes it has reached his destination and has stopped for the purpose of his getting off and goes on to the platform for that purpose, when the train starts up again, it is not negligence for him to remain on the platform if the train is to go only a short distance before stopping again, if he holds securely to the guard rails.

2. **Same—Evidence.**
When a person riding upon a freight train as a passenger is injured by the sudden stopping of the train, in an action for the recovery of damages therefor he makes out a prima facie case when he proves that the injury sustained resulted from a jolt occasioned by an unusually sudden stop of the train which was other than a necessary incident to the careful handling of such train, and the facts and circumstances surrounding the injury were such as to speak negligence.

(Syllabus by Mathews, C.)

Error from District Court, Pottawatomie County; Chas. B. Wilson, Jr., Judge.

Action by W. A. Grace against the Chicago, Rock Island & Pacific Railway Company, a corporation. Judgment for plaintiff, and defendant brings error. Affirmed.

R. J. Roberts. C. O. Blake, W. H. Moore, K. W. Shartel, and Edward Howell, for plaintiff in error.

W. N. Maben, for defendant in error.

Opinion by MATHEWS, C. The parties will be designated as in the trial court. This is an action for the recovery of damages for personal injuries alleged to have been received by plaintiff while a passenger upon defendant's freight train. Judgment was for the plaintiff in the sum of $300, and, the motion for a new trial having been overruled, this appeal was lodged here.

At the close of the evidence the defendant moved the court to instruct the jury to return a verdict for the defendant, and the refusal of the same is the first assignment of error presented. At the time of the alleged injuries the plaintiff was riding upon a local freight train which carried passengers, having boarded the same at McCloud for Shawnee. When the train reached the yards of defendant at Shawnee it went onto a side track and stopped, and the plaintiff testifies that he thought it had reached Shawnee and had stopped for the passengers to get off, and so he walked out on the platform for that purpose, and the train started up again, so he just stood on the platform holding to the iron guard, and the train suddenly stopped again, causing him to fall and to be injured thereby.

It was proven at the trial that the following notice was posted up in a conspicuous place in the caboose of the train where plaintiff was riding before he went out on the platform:

"Notice to Passengers.

"Passengers are not allowed to ride in mail, baggage, express or freight cars, nor on the steps or platforms of coaches and cabooses. They must remain seated until train comes to a full stop."

Section 1423, Rev. Laws 1910, reads as follows:

"In case any passenger on any railroad shall be injured while on the platform of a car while in motion, or in any baggage, wood or freight car, in violation of the printed regulations of the corporation posted up at .the time in a conspicuous place inside of its passenger cars then in the train, such corporation shall not be liable for the injury, if it had furnished room inside its passenger cars sufficient for the accommodation of its passengers."

Defendant contends that, as plaintiff had voluntarily gone out on the platform and stood there while the train was in motion, under the provisions of the above statute he is precluded from recovery even if he was injured. Ordinarily this contention would be true, but in the case at bar the plaintiff, in our opinion, justifies his conduct for being on the platform at that time. The train had reached 'his destination, and after going onto the side track in the yards at Shawnee had stopped. We think plaintiff's conclusion that it had stopped for the passengers to get off was reasonable, and so he went out on the platform for the purpose of getting off, but before he could do so the train started up again. The question then arises whether it was his duty to return to his seat in the caboose after the train started, or should he have remained upon the platform and held to the iron guards provided for that purpose? In view of the fact that the train was moving slowly and was approaching the real stopping place where he was to get off, ordinarily there would have been a greater probability of an injury in leaving his position with the protection of his hold on the handrail for the purpose of re-entering the caboose than in remaining on the platform, and under these conditions we do not believe he should forfeit his right to recover because he happened to be upon the platform at the time of the accident. Ordinarily the above statute, as well as the rule of contributory negligence. would preclude a recovery, but we believe the special facts in this case avoid the usual rule.

Defendant's next contention is that under the rule laid down in the case of St. Louis & S. F. Ry. Co. v. Gosnell, 23 Okla. 588, 101 Pac. 1126. 22 L. R. A. (N.S.) 892. it was entitled to an instructed verdict. The question now presented is: When does the plaintiff, in cases like the one at bar, make out a prima facie case?

In the Gosnell Case, supra, it was held that in order to send the question of negligence in handling the train to the jury it must affirmatively appear that the jar that occasioned the injury was of extraordinary severity and directly attributed to the negligent or careless handling of the engine by the engineer, and that, in the absence of such evidence, it is presumed that the engineer did his duty, and that the sudden stop of the train and the jar which caused the injury arose from the exigencies of the service. While in that case the court held that the trial court erred in not instructing a verdict for the defendant, yet in arriving at the conclusion that the jar caused by the stopping of the train was not ipso facto negligence and proof thereof insufficient to take the question of negligence to the jury, it will be noted that the court rejected in toto the evidence adduced by plaintiff as to the nature and character of the stop, holding the same to have no probative force and to be mere expressions of opinion. No reason is given in the opinion as to why the court rejected plaintiff's evidence, but it is plainly apparent that such a holding is based upon the fact that such evidence called for expert witnesses, and that it was not shown that plaintiff's witnesses showed themselves to have had experience or information sufficient to qualify them to testify when a jar or jolt of a train was unusual and out of the ordinary. Defendant had offered evidence tending to prove that the jar or jolt which occasioned the injury complained of was only the usual jar which ordinarily accompanies the operation of freight trains, and, the plaintiff having no counter evidence at all on that subject, it naturally follows that there should have been an instructed verdict for the defendant, and that is all the Gosnell Case intends to hold.

While the case of St. Louis & S. F. R. Co. v. Fitts, 40 Okla. 685, 140 Pac. 144, L. R. A. 1916C, 348, was a passenger train case, yet we believe the same is more in point, because there plaintiff's evidence was not declared inadmissible, and from this case we take the following:

"The general rule, however, is that, where the thing which causes the accident is exclusively controlled or managed by the carrier, and the accident is such as in the ordinary course of events does not happen if those who have the control or management use proper care, it affords reasonable evidence, in the absence of explanation by the carrier, that the accident arises from want of care. Gilmore v. Brooklyn Heights Ry. Co., 6 App. Div. 117, 39 N. Y. Supp. 417.

Among the cases governed by the foregoing rule are those where the injury arose from sudden starts, sudden stops, jerks, jolts, etc. The tendency of the decisions seems to be that, if the jerk is of such violence that it would not be one likely to occur, or necessary, in the ordinary operation of transportation, a presumption of negligence will arise. It has been held that a very violent jerk of a car, resulting in injury to a passenger, raises a presumption of negligence against the carrier. Chicago City R. Co. v. Morse, 98 Ill. App. 662; Evansville & T. H. R. Co. v. Mills, 37 Ind. App. 598, 77 N. E. 608; Southern R. Co. v. Cunningham, 123 Ga. 90, 50 S. E. 979. And that a violent jerk, throwing a passenger down and out of a car, raises a presumption of negligence in the carrier. Ill. Cent. R. Co. v. Beebe, 69 Ill. App. 363; Griffin v. Pacific Elec. R. Co., 1 Cal. App. 678, 82 Pac. 1084; Scott v. Bergen County Traction Co., 63 N. J. Law. 407, 43 Atl. 1060; Consolidated Traction Co. v. Thalheimer et al., 59 N. J. Law, 474, 37 Atl. 132; Lomas v. N. Y. City Realty Co., 188 N. Y. 628, 81 N. E. 1169."

The latest expression of our court on this point is found in the case of Ramsey v. McKay, 44 Okla. 774, 146 Pac. 210, which is a freight train case, which follows the Fitts Case, supra, and, we believe, is decisive of the proposition under consideration, and holds adversely to defendant's condition. It is true that in this case there were some statements made by the conductor in charge of the train in which he complained of the engineer making such sudden stops, and the court held that evidence that the stop which caused the injuries was of such violence that it was not likely to occur or necessary in the ordinary operation of the freight train in question, together with the said statement of the conductor, made out a prima facie case and cast upon the railroad company the burden of relieving itself of responsibility by showing that the sudden stop complained of was the result of an accident which the exercise of skill, foresight, and diligence could not have prevented.

The law as established by the authorities in cases of this character will not permit a recovery until there is evidence to justify a finding by the jury that the jolt complained of was something more than the ordinary jolt necessarily incident to stopping of freight trains under circumstances similar to the occasion at bar. It is a matter of common knowledge that jolts and jerks are common and nearly always incident to the stopping of freight trains, and for that reason an injury resulting from a jolt caused by the sudden stopping of a freight train does not of itself speak negligence, and before a recovery can be sustained there must be produced evidence to support the contention that the jolt caused by the sudden stop was of such unusual severity that it was not attributable to the jolting ordinarily incident to the ordinary stopping of freight trains under the same or similar conditions, and in those cases wherein it is proven to the satisfaction of the jury that the injury sustained resulted from a jolt occasioned by a sudden stop of a freight train which was other than a necessary incident to the careful handling of such train, and the facts and circumstances surrounding the injury were such as to speak negligence. a prima facie case is thereby made out. Hawk v. Railroad, 130 Mo. App. 658, 108 S. W. 1119; Todd v. Missouri Pacific Ry. Co., 126 Mo. App. 684, 105 S. W. 671; Foley v. Boston & Maine R., 193 Mass. 332, 79 N. E. 765, 7 L. R. A. (N.S.) 1076; McGinn v. New Orleans Ry. & Light Co., 118 La. 811, 43 South, 450, 13 L. R. A. (N.S.) 601; Brown v. Union P. R. Co., 81 Kan. 701, 106 Pac. 1001, 29 L. R. A. (N. S.) 808.

We find the following in Shearman & Redfield on Negligence, par. 59:

"When a thing which causes injury is shown to be under the management of the defendant, and the accident is such as, in the ordinary course of things, does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from a want of care. * * *"

This brings us to an examination of the evidence in this case to determine whether or not it comes within the above rule.

The plaintiff introduced only one witness besides himself. This witness testified that he boarded the train at the same time plaintiff did for the same destination; that after the train got into the yards at Shawnee it stopped all at once and shoved the cars together, tearing things up considerably; "they stopped the train just like that (indicating by slapping his hands together); it did not stop gradual, but just like that (indicating as before)" He was sitting inside the door and it threw him about six feet against the side of the seat; that it knocked the conductor, who was sitting at his desk in a big chair, out of his chair into the aisle about four or five feet from his desk, and also knocked the brakeman down and threw all the water out of the cooler. This witness also testified that he was injured, and at that time had a suit pending against the defendant for the same.

The plaintiff testified the train stopped very suddenly; was an unusual stop; that he was standing holding to the guard rails,

and all at once the train stopped like that (indicating by slapping his hands together) and threw him against some object.

It is probably true that plaintiff's own testimony fails to prove anything, and does not tend to make out a prima facie case, but the testimony of his witness as above detailed to the effect that he was jolted from his seat into the aisle, that the conductor was knocked out of the big chair in which he was sitting, and that the brakeman also was thrown down, and all the water emptied from the water cooler, presents a condition which no railroad company would care to claim to be an ordinary and usual occurrence on its freight trains. Such a condition would not be very inviting to passengers, and it would be a very strenuous life for the crew to have to endure from day to day. We think such proof establishes a prima facie case, and that such occurrences are out of the ordinary and very unusual.

All of the above evidence was emphatically contradicted by the train crew, and each testified that the stop complained of resulted in no mishaps of any kind, and was only an ordinary stop of the average freight train. Such contradiction in evidence is unexplainable, other than that some one was very careless with the truth. However, the credibility of the witnesses is a matter for the jury to decide, but it is to be deplored that such glaring and emphatic contradictions among witnesses should be so common. Especially so in cases like the one at bar, where there is no room for an honest difference.

Defendant finally contends that the evidence of the plaintiff as set out above consists of mere expressions or conclusions of the witnesses which prove nothing. In the Gosnell Case, supra, such evidence was rejected by the court, but, we believe, on account of the incompetency of the witnesses. In the Fitts and McKay Cases, supra, similar evidence was admitted, and while its probative value is of an uncertain quantity, which is a matter for the jury, we believe, if the witness is otherwise qualified to testify on the point, that the evidence should not be rejected as mere opinion evidence or as a conclusion of the witness. In the case at bar each of the witnesses testified that they were accustomed to riding on freight trains, and had ridden on them often, and it is to be presumed that they were offered as experts, and their qualification as such rested largely within the discretion of the trial judge, and we are not prepared to say that he abused his discretion in admitting the evidence.

We recommend that the judgment be affirmed.

By the Court: It is so ordered.