## Chesapeake & Ohio Railway Company v. Mollett.

(Decided March 10, 1925.)

### Appeal from Johnson Circuit Court.

1. Carriers—Contract Creating Carrier and Passenger Relationship May be Implied.—Contract creating carrier and passenger relationship may be implied from circumstances.

2. Carriers—Contract Making One a Passenger Not Created by Entering Train Without Being Seen.—Where woman intending to pay fare on train, which she entered after it had left station and was standing on siding, rode without having been seen by employees of carrier to next station, where she fell off while train was moving, there was no contract, express or implied, and she was not a passenger, there being nothing from which to imply acceptance of relationship by carrier.

3. Carriers—Failure of Employees of Carrier to Discover Woman Riding in Coach Not Negligence.—Where woman boarded train after it had left station and was waiting on siding for another to pass, conductor already having collected tickets and being in coach ahead, employees of carrier held not negligent in failing to discover her before reaching next station.

WORTHINGTON, BROWNING & REED and KIRK, KIRK & WELLS for appellant.

W. H. VAUGHAN & SON for appellee.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE— Reversing.

Appellant, C. & O. Railway Company, prosecutes this appeal from a judgment of the Johnson circuit court rendered against it in favor of appellee, Rebecca Mollett, in an action by her against it for personal injuries. The facts are these: On December 19, 1922, one of appellant's regular passenger trains on the Big Sandy division

stopped at a station known as Whitehouse. The passengers for that station alighted and those at the station desiring to board the train did so and the train left the station. It entered a siding near the station to permit another passenger train going in the opposite direction to pass. While entering the siding the conductor passed through the train and took up the tickets of those who had entered at Whitehouse. Appellee, Rebecca Mollett, had intended to board the train at Whitehouse but did not reach the station until after the train had left. However, before she reached the station she saw the train on the siding and without going to the station and purchasing a ticket, but, as she testified, with the intention of paying her fare on the train, boarded it, entered one of the regular coaches and took her seat. It appears that she did not see any of the train crew before she entered or at any time while she was on the train; neither did any of them see her enter or know that she was on the train. It was her intention to ride to Chestnut, the next station. Having worked the train after it left Whitehouse and before appellee entered it, the conductor had no occasion to and did not go into the coach in which she was riding before the train reached Chestnut. It appears that Chestnut is merely a flag station and, there being no passenger for that station on the train known to the conductor, he gave no signal to stop there. However, there were two passengers at the station who desired to board the train there and consequently it was flagged to enable them to do so. Upon being flagged the engineer signalled with the whistle indicating a stop and slowed down, intending to stop that the passengers might board the train. Before the train came to a stop, however, the two passengers boarded the moving train. Upon seeing that, the conductor, knowing of no other reason to stop the train at Chestnut, pulled the signal cord and signalled the engineer to proceed. He immediately turned the steam into the engines and the train began to pick up speed again. The conductor and brakeman were in a coach other than the one in which appellee, Mollett, was riding and did not know of her presence or of her desire to leave the train at Chestnut. When the train began to slacken speed at it approached the station, appellee, believing that it was going to stop, left her seat and went into the vestibule and upon the steps leading from it. According to her testimony, after she reached the steps the train, after having slowed down but without stopping, began

to pick up speed again and before she could return to the coach its speed had been considerably accelerated and, using her language: "And then all at once she gave a lurch or something that caused me to fall and as I fell I heard someone holler; the next thing I knew I was on the ground." She suffered a compound fracture of both bones of one of her legs just above the ankle, and from the testimony undoubtedly suffered intensely from the injury.

The question presented is whether or not the relation of carrier and passenger existed and whether or not appellee could recover for her injuries upon the theory that she was the passenger of appellant under the facts and circumstances of the case. Unless the relation existed appellant was entitled to a peremptory instruction at the close of the testimony, because appellee's cause of action was predicated upon the existence of the relation at the time of the injury and appellant's violation of the duty it owed to her growing out of that relation. The question presented is a novel one. We have been unable to find a similar case in our research on the question and neither brief has pointed out one to us.

Under the topic of Carriers, considering the question "Who are Passengers?" 10 Corpus Juris, page 610, lays down the following general principles:

"It is difficult to lay down a comprehensive definition of the word 'passenger,' or to exhaust in a single statement all the possible circumstances under which the relation of carrier and passenger may exist; and, although a definition often given is that a passenger is one who travels in some public conveyance by virtue of a contract expressed or implied, with the carrier, as to the payment of fare or that which is accepted as equivalent therefor, this definition, like some others which have been made, does not comprehend all possible situations; for ordinarily every person not an employee, who is carried by the express or implied consent of the carrier on a conveyance usually employed in the carriage of passengers, is presumed to be lawfully on it as a passenger."

Further in the same work, on page 611, it is said:

"The relation of carrier and passenger is dependent on the existence of a contract of carriage,

express or implied, between the carrier and the passenger, made either by themselves or by their respective agents. It is the existence of such a contract which distinguishes a passenger from a licensee, a trespasser, an employee of the carrier, an employee of a sleeping car company, and other persons riding in the carrier's vehicles. A mere contract for future transportation does not of itself create the relation of carrier and passenger, where the person so contracting has not placed himself under the care of the carrier as passenger.

"The relation of carrier and passenger commences when one puts himself in the care of the carrier, or directly within its control, with the *bona fide* intention of becoming a passenger, and is accepted as such by the carrier, as where he makes a contract for transportation and presents himself at the proper place and in a proper manner to be transported, but not where he does not present himself in a proper way to become a passenger.

"It is not required, however, that there be any formal act of delivery of the passenger's person into the care of the carrier, or of acceptance by the carrier of one who presents himself for transportation; but the existence of the relation is commonly to be implied from the attendant circumstances; and the rule is that these circumstances, either by the purchase of a ticket or otherwise, must be such as will warrant an implication that he intends to become a passenger and offers himself to be carried, and that the offer is accepted by the carrier. But the mere fact of intention to become a passenger, which intention has not been by acts or otherwise indicated to the servants of the carrier, does not render the person having such intention a passenger, although he may be entitled to transportation."

4 R. C. L., sections 470, 471 and 472, beginning on page 1002, announces the general rule as to how the relation of carrier and passenger is created in language very similar to that quoted from Corpus Juris above.

It must be conceded that the relation is a contractual one. The contract, however, may be implied. We are unable to understand, however, how a contract may be made either expressly or impliedly between a carrier and a passenger without some fact or circumstance appear-

ing to establish that the carrier or its agents in some way have knowledge that the relation is being imposed upon it. In this case it is true that appellee boarded one of appellant's trains, entered one of the coaches thereof, seated herself in one of the seats provided for passengers and was actually transported by appellant. However, she entered the train without purchasing a ticket, did so at a place where passengers were not accustomed to enter it and without seeing or being seen by any of the agents of appellant. Under the circumstances the fact that none of appellant's agents discovered her presence upon the train was not due to negligence or any lack of care upon their part. Under all the facts and circumstances surrounding this case, we are unable to conclude that the contractual relation, either express or implied, of passenger and carrier was ever created or existed. Appellee's cause of action, as the petition was drawn, was for an injury which she suffered while as she alleged she was a passenger pursuant to the relation of passenger and carrier existing between her and appellant. Being convinced that under the particular facts of this case the relation of passenger and carrier did not exist, it follows that appellee did not manifest her right to recover. At the conclusion of the evidence heard the trial court should have peremptorily instructed the jury to find for appellant.

For these reasons the judgment herein is reversed and this cause is remanded for further proceedings consistent herewith.