## CHICAGO, R. I. & P. RY. CO. v. WARREN.

No. 12356.    Opinion Filed April 17, 1928.

Rehearing Denied Aug. 24, 1928.

(Syllabus.)

1. **Removal of Cause—Removal of Cause to Federal Court—Denial of Petition—Procedure to Secure Review of Ruling in State Supreme Court After Trial.**

Where, in a civil suit for damages against a nonresident corporation, a petition, bond, and notice for removal of the cause to federal court are filed and defendant asks of and obtains from trial judge a ruling thereon evidenced by formal order which denies removal, and defendant takes no steps to pursue his remedy in federal court, but files his answer and case is tried in state court upon issues made, and defendant, losing, relies alone upon appeal to correct any error in ruling on petition for removal, defendant must save his exception and present same to trial court and to appellate court, all in accordance with procedure and practice of state courts; otherwise, the alleged error will be taken as waived.

2. **Appeal and Error—Decisions Appealable —Order Denying Removal of Cause not "Final Order."**

To constitute a "final order" in an action, unless otherwise provided by statute, it must be an order affecting a substantial right in the action, the effect of which is to determine the action and prevent a judgment. An order denying petition of removal of a case from a state to a federal court is not

such a "final order" under our statute with reference to appeals.

**3. Removal of Causes—New Trial—Error in Order Denying Removal of Cause Not "Irregularity in Proceedings" Preventing Fair Trial.**

A motion for new trial based upon the words "irregularity in the proceedings of the court by which the party was prevented from having a fair trial," does not present to the trial court, nor to this court, on appeal, an alleged error in a formal order of the court denying removal of said cause from the state court to federal court on the ground of diversity of citizenship.

**4. Carriers — "Passengers" — Liability of Carrier for Personal Injury—Rights of Civilian Acting as Mess Sergeant for National Guard Company En Route to Encampment.**

Where a civilian minor is invited by a captain in a company of National Guard to go with the company on an encampment and act as assistant mess sergeant, accepts the invitation, and actually enters upon performance of the work and is guilty of no concealment or bad faith in taking passage on a railroad train transporting the company to the encampment, and where captain of company applies for transportation for 55 men and the railroad furnishes a group ticket for the 55 men, and all the fares are paid, and where railroad imposes no condition with respect to men to be transported, other than that they shall be such as captain designates, and such 55 men, including the minor, are taken aboard the train whereon the said minor is injured during the trip by negligence of the carrier, such carrier is not entitled to a peremptory instruction either to the effect that plaintiff is not a passenger, or that he is not entitled to recover, and it is not error for the court to refuse such tendered instructions.

**5. Carriers—When Person Becomes "Passenger."**

One becomes a passenger on a railroad train when he in good faith puts himself into the care of the railroad company and enters its coach to be transported under a contract, and is received and accepted as a passenger by the company.

**6. Same—Liability for Injuries to Passenger While on Coach Platform—Question of Contributory Negligence for Jury.**

Where a passenger on a railroad receives an injury while on the platform due to negligent handling of train, and also negligent failure of the road to equip its coaches with chaffing irons and thereby leaving the bumpers exposed, section 5524, C. O. S. 1921, will not preclude recovery by plaintiff, where the evidence shows that the train was actually or practically stopped, and that plaintiff was on the platform for the purpose of disembarking, or was passing over platform to secure personal belongings from another coach preparatory to disembarking, and the question of whether or not plaintiff was guilty of negligence in going on the platform at the time is for the determination of the jury.

**7. Same—Judgment Sustained on Condition of Remittitur.**

Evidence examined, and held, that, subject to modification made in succeeding paragraph, the judgment of the court is sustained by the evidence.

**8. Same—Verdict for $20,000 Held Excessive to Extent of $8,000.**

Where there is a recovery in an amount sufficient to convince the court that the same is excessive and was the result of passion and prejudice, this court will require a remittitur by plaintiff, and if same is not filed, the cause will be reversed and remanded for new trial.

Commissioners' Opinion, Division No. 2.

Error from District Court, Marshall County; Geo. S. March, Judge.

Action by Edward Warren, minor, by his next friend, against the Chicago, Rock Island & Pacific Railroad Company for damages for personal injuries Judgment for plaintiff below for $20,000. Recovery held excessive; cause reversed, and remanded for new trial, unless plaintiff will remit within 15 days all of recovery except judgment for $12,000 as of this date, in which event case affirmed subject to such remittitur. Reversed unless remittitur filed by plaintiff.

W. R. Bleakmore, John Barry, A. T. Boys, and W. F. Collins, for plaintiff in error.

Ledbetter, Stuart, Bell & Lebdetter and A. G. Morrison, for defendant in error.

BENNETT, C. The parties will be referred to in the order in which they appeared in trial court. Edward Warren, a minor, by his father, Joe Warren, as next friend, brought this action for damages for personal injuries against the Chicago, Rock Island & Pacific Railway Company in district court, Marshall county, Okla. The petition alleged that plaintiff was a resident of Canadian county, Okla., in Western Judicial District of the United States for Oklahoma; that defendant was a foreign corporation organized and existing under laws of Illinois and Iowa, and engaged in maintenance and operation of a railroad through Oklahoma and other states. It was alleged also that Marshall county was within Eastern Judicial District of United States for Oklahoma, and that, on August 5, 1920, plaintiff, while a passenger on defendant's

road, was severely and permanently injured in his left foot through negligence of said defendant.

Defendant filed its petition, bond and notice for removal of said cause to United States Court, which are formal and adequate for such purpose. Said petition sets out diversity of citizenship. October 25, 1920, this petition was heard and denied by the judge of district court of Marshall county. Defendant filed in said court its answer consisting of general denial, and plea that if plaintiff was injured he contributed thereto by riding on platform while train was in motion. Plaintiff replied by verified general denial. Upon trial before a jury, a verdict and judgment for $20,000 was rendered for plaintiff, from which this appeal is taken. Motion for new trial contained seven grounds and petition in error two grounds, to wit: (1) Error in overruling motion for new trial. (2) Error in granting judgment against defendant.

The determinative questions may be reduced to the following:

(1) **Was the order of district court denying removal a final order under our statute relating to appeals?** (If it were such a final order from which an appeal should have followed, this appeal is not properly here for the order was made more than six months before the appeal was lodged in this court. Star Mill & Elevator Co. v Bruce, 77 Okla. 113, 186 Pac. 940.)

(2) **Does motion for new trial based on "irregularity in the proceedings of the cours * * * by which defendant was prevented from having a fair trial" present the alleged error of trial court in overruling petition for removal?**

(3) Was the verdict contrary to law?

(4) Was the verdict supported by the evidence?

(5) Was defendant entitled to an instructed verdict?

(6) Was it error to permit plaintiff to testify that he thought he had a right to ride on defendant's train?

(7) Was there error in the court's instruction warranting reversal?

(8) Was the verdict excessive?

1. Now addressing ourselves to these inquiries in order: **Was the denial of removal a final order?** Section 781, C. O. S. 1921, provides:

"**Final Order Defined.** An order affecting a substantial right in an action, when such order, in effect, determines the action and prevents a judgment, * * * is a final order,

which may be vacated, modified or reversed, as provided in this article."

We have found no case in Oklahoma passing directly upon the question as to whether or not the ruling on a petition to remove a case to United States court is an appealable order. The following cases, however, by analogy, are of value:

In Chicago Building & Mfg. Co. v. Kirby, 10 Okla. 730, 63 Pac. 966, it is said in the syllabus:

"Where a court has no jurisdiction over the particular cause or of the person of the defendant, and the defendant appears specially for the purpose of calling the attention of the court to such irregularities, and the court thereupon overruled his motion to such jurisdiction, he may save his exception, file his answer and proceed to trial without waiving such error; and he may take advantage of such error on appeal to a higher court."

To the same effect: Okla. Fire Ins. Co. v. Barbour Asphalt Co., 34 Okla. 149, 125 Pac. 734; St L. & S. F. R. Co. v. Clark, 17 Okla. 562, 87 Pac. 430; Austin Mfg. Co. v. Hunter, 16 Okla. 86, 86 Pac. 293.

Attention is called to Spaulding v. Polly, 28 Okla. 764, 115 Pac. 864, where the same rule is announced, and in addition it is held that movant **was not compelled to appeal within the statutory time,** but might have the benefit of his exception on appeal of the whole case.

In Commonwealth Cotton Oil Co. v. Hudson, 62 Okla. 23, 161 Pac. 535, the court, in the opinion, says:

"It is, we think, the well settled rule of this court that, upon the overruling of such a plea to the jurisdiction, defendant may go on and answer and defend the suit brought against him, and, having saved his exceptions to the ruling of the court on his plea to the jurisdiction, may have such ruling reviewed here upon an appeal, bringing up the whole case."

To the same effect: Wm. Cameron & Co. v. Consolidated School District No. 1, 44 Okla. 67, 143 Pac. 182.

The second paragraph of syllabus in Oklahoma City Land & Development Co. v. Patterson, 73 Okla. 234, 175 Pac. 934, is as follows:

"A 'final order' is one ending the particular action in which it is entered, leaving nothing further for the court pronouncing it to do in order to determine the rights of the parties."

If, in fact, the trial court is called upon and rules upon petition to remove, it is only for the purpose of determining whether or not the essential facts constituting the

ground for removal are alleged. He must treat the allegations as true, and, if the petition makes out a case for removal, the case should be removed. In this respect the court passes upon the facts in the petition in the same manner as upon a demurrer to a petition.

"When a petition for removal to the proper court of the United States is filed in a state court, accompanied by the proper bond, only a question of law as to the sufficiency of the petition for removal is presented to the state court." Western Coal & Min. Co. v. Osborne, 30 Okla. 235, 119 Pac. 973.

However, the action of the court in overruling a demurrer to a petition, unless demurrant stand upon same, is not a final order, and the correctness of the ruling thereon is finally passed upon only after the case is tried upon the merits, and the whole case brought up on appeal. Simmons ·v. Chestnut-Gibbons Grocery Co., 70 Okla. 161, 173 Pac. 217. It would seem, therefore, by analogy, that an exception to the overruling of a motion to remove should properly be brought up on appeal of the whole case after judgment.

The Supreme Court of the United States in C. & O. R. Co. v. McCabe, 213 U. S. 207, quotes with approval from Ry. Co. v. Koontz, 104 U. S. 5, as follows:

"If after a case (for removal) has been made, the state court forces the petitioning party to trial and judgment, and the highest court of the state sustains the judgment, he is entitled to his writ of error to this court **if he saves the question on the record. * * * The petitioning party has the right to remain in the state court under protest and rely on this form of remedy if he chooses, or he may enter the record in the circuit court and require the adverse party to litigate with him there, even while the state court is going on.** This was actually done in the Removal Cases." (100 U. S. 457, 25 L. Ed. 593.)

An order refusing to transfer an action against a foreign corporation and residents to a federal court, on the ground that the petition does not state a cause of action against the residents, is not a final order and appealable, since, during the trial, on its developing that plaintiff had no reasonable grounds upon which to base the allegation that the residents are liable, the court must find for the residents, and transfer the case to the federal court. C. & O. R. Co. v. Helton's Adm'r (Ky.) 132 S. W. 1024.

Paragraph 5 of the syllabus, in State v. Mosman (Mo.) 133 S. W. 38, reads:

"An order removing a cause to the federal court is not a final judgment within Rev. St. 1909, sec. 2038, authorizing an appeal from a final judgment, and, since it is not one of the special orders mentioned therein from which an appeal is allowed, such an order is not appealable."

A very exhaustive discussion of final orders may be found in Wells v. Shriver, 81 Okla. 108, 197 Pac. 460. See, also, Words & Phrases (2nd Ser.) vol. 2, p. 556, defining "final order," citing White Oak Ry. Co. v. Gordon, 56 S. E. 837, 61 W. Va. 519.

From the foregoing authorities, we hold that the order was not a final order requiring appeal, and that the question, if properly preserved, may be urged on appeal of the whole case prosecuted within time.

2. **Does a motion for new trial for "irregularity in the proceedings of the court * * * by which defendant was prevented from having a fair trial" present the alleged error of court in overruling petition of defendant for removal?**

It appears from the record beyond cavil that the order of court complained of was made sometime before trial. In the case of C. & O. Ry. Co. v. McDonald, 214 U. S. 191, 53 L. Ed. 963, wherein the alleged error grew out of the refusal to remove the case from a state to a U. S. Circuit Court for the Eastern District of Kentucky, it was said:

"The right to review a judgment of a state court by error proceedings in this court is regulated by par. 709, Revised Statutes of the United States (U. S. Comp. Stat. 1901, p. 575). To lay the foundation for such right of review, **it is necessary to bring the federal question in some proper manner to the consideration of the state court whose judgment it is sought to review; if this is not done the federal question cannot be originated by assignments of error in this court. * * *** Columbia Water Power Co. v. Columbia Electric Street R. L. & P. Co., 172 U. S. 475, 43 L. Ed. 521; Fowler v. Lamson, 164 U. S. 252, 41 L. Ed. 424; Clarke v. McDade, 165 U. S. 168, 172, 41 L. Ed. 673; Capital City Dairy Co. v. Ohio, 183 U. S. 238, 248, 46 L. Ed. 171, 176. * * * In the latter case this court said: 'It is settled that this court, on error to a state court, cannot consider an alleged federal question, when it appears that the federal right thus relied upon **had not been by adequate specification called to the attention of the state court, and had not been by it considered, not being necessarily involved in the determination of the cause.'** * * * It is contended, however, that, if the case were a removable one, the effect of filing a petition and bond was to devest the jurisdiction of the state court; and this has been said in decisions of this court upon the subject. **This does not mean, however, that the right to review the judgment of a state court** only by proper proceedings under par.

709 of the Revised Statutes is in anywise altered or modified. When the state court upon the second application, refused to remove the case, it was the privilege of the railroad company to take a transcript of the record, and make an application to file it in the federal circuit court; and, if that court sustained its jurisdiction, it might have protected the same by injunction against further proceedings in the state court, or if the latter court refused to surrender the record, a writ of certiorari could issue to require its transfer to the Circuit Court of the United States (Chesapeake & O. R. Co. v. McCabe, decided April 5, 1909, 213 U. S. 207, ante 765, 29 Sup. Ct. Rep. 430); or, **remaining in the state court after that court refused to remove, it might, after final judgment, have brought the case here for review; but this does not mean that it could have a review of the judgment of the state court when it has failed to invoke the judgment of that court within the time prescribed by the statute of the state for the review of such orders. * * * But it could not remain in the state court, without any attempt to have the order refusing the removal reviewed within the statutory period, and escape its judgment on the ground that it was void, if against it, because the case was a removable one.**"

If the correct holding requires that it should appeal **within the required time**, or else be bound by the judgment, would not the same rule of reason require that it should appeal **within the manner** prescribed by the statutes and procedure of the state court, or else be bound in like manner by the judgment? In Harding v. Illinois, 196 U. S. 78, 49 L. Ed. 394, it was held that a federal constitutional objection might be waived so far as having the right of review of a judgment in a state court was concerned.

If the above authority from the United States Supreme Court is correct and controlling, we may safely assert that a party may remain in state court and take his chance of success there after his petition to remove has been overruled, and that such action, over his protest, does not constitute a waiver. But if he does remain, he must conform to rules of such court in preserving, according to state procedure, his federal question, and if he fail, he cannot escape upon the theory that the judgment is wholly void.

As was said in Rosenthal v. Coates, 148 U. S. 142, 37 L. Ed. 399;

"The removal acts do not contemplate that a party may experiment on his case in the state court, and, upon an adverse decision, then transfer it to the federal court."

It is unnecessary for a defendant to secure a formal order signed by the court either removing or refusing to remove the cause, but if movant insists upon having the court exercise its judicial judgment thereon, he invites opportunity for an adverse, and, perchance, an erroneous order; and in the latter case the decision rests with movant as to how he may legally avoid a judgment founded thereon. In the case at bar, movant has sought by appeal only to escape judgment based upon this ruling, and for such purpose relies upon certain exceptions.

Let us proceed now directly to the question of whether the alleged error of court was presented by defendant's motion for new trial in the words "irregularity in the proceedings of the court," for upon these words alone defendant relies. Hayne on New Trial and Appeal, vol. 1, chap. 3, page 140, says, discussing grounds of motion for new trial:

"The first subdivision of the section specifying the grounds upon which a motion for new trial may be made is as follows: 'Irregularity in the proceedings of the court, jury, or adverse party, or any order of the court or abuse of discretion by which either party was prevented from having a fair trial.' The foregoing is a reproduction of the language of subdivision 1 of section 193 of the Practice Act of 1851, which stood unchanged from 1851 to the adoption of the Code of Civil Procedure. As will be perceived, the scope of the subdivision is very wide. Irregularity of the court, irregularity of the jury, and irregularity of the adverse party are three separate subjects of considerable extent. While 'any order of court or abuse of discretion,' etc., is almost without limitations."

The same authority at page 157 states:

"It is very certain that an error in law in admitting or rejecting evidence, or in giving or refusing instructions, or in granting or denying a motion for nonsuit, or in admitting or overruling a challenge for actual bias or for cause, could not be reviewed as an irregularity of the court under the first subdivision. **Nor does the term cover the cases designated by the phrase 'any order or abuse of discretion';** for the statute seems to use the terms as referring to different classes of cases. Speaking generally, by an irregularity of the court is meant some conduct of the court other than orders or rulings. * * * 'As ordinarily understood, an error of law is committed when the court, either upon motion of one of the parties, or upon its own motion, makes some erroneous order or ruling on some question of law which is properly before it and within its jurisdiction to make.' Pratt v. Pratt, 141 Cal. 247, 74 Pac. 742."

In Gay v. Torrance, 145 Cal. 144, 78 Pac. 540, the term 'irregularity' as used in the section under consideration is defined:

"The language of the statute is sufficiently broad to include any departure by the court from the due and orderly method of disposition of an action by which the substantial rights of a party have been materially affected, **where such departure is not evidenced by a ruling or order that may be made the subject of an exception.**"

It is true that if defendant had set out **in full** the first statutory ground in his motion for new trial, it would have covered the point in question. The entire statutory ground reads as follows:

"Irregularity in the proceedings of the court, jury, referee, or prevailing party, **or any order of the court** or referee, or abuse of discretion by which the party was prevented from having a fair trial." See 572, subd. 1, C. O. S. 1921.

That part of this section beginning with "any order of the court" was appropriate to cover, and by its words was intended to cover and **would have covered, the very exception sought to be availed of here;** but that part was omitted from defendant's motion for new trial. Under the authorities referred to, and under the plain intent, meaning, and interpretation of the words of this section, do the words "irregularity in the proceedings of the court" refer to a separate error or irregularity from that arising under and implied in "any order of the court," or are they the same thing, and do they refer to the same thing? Did the Legislature mean nothing by separating these provisions by the disjunctive "or," or was it a duplication of the ground? Were they using simply a synonym referring in different words to the same matter? We can hardly believe so, for it appears these words have been part of the Civil Procedure in some, if not most, of the states for more than half a century.

In Mr. Hayne's work on "New Trial and Appeal," supra, he sets out numerous instances of irregularity which come and were intended to come clearly under this provision, and practically all of them deal with irregular conduct on the part of the court, or its officers, entirely apart from any matter of erroneous ruling by the judge. In the case of Mitter v. Black Diamond Coal Co. (Wyo.) 206 Pac. 152, at p. 156, the court says:

"An irregularity is a want of adherence to some prescribed rule or mode of proceeding, either in omitting to do something necessary to the orderly conduct of the suit, or in doing it at an unseasonable time or in an improper manner. 1 Tidd's Pr. 512. Irregularities do not result from wrong adjudications, and in that respect are to be distinguished from errors. Everett v. Henderson, 146 Mass. 89, 14 N. E. 932, 4 Am. St. Rep. 284; Orvis v. Elliott, 65 Mo. App. 96; 1 Black on Judgments, sec. 170."

33 Corpus Juris, at page 814, gives a definition of "irregularity," too long to quote here, but from its substance may be deduced the conclusion that irregularities have reference to form rather than substance; and the definition is closed by the significant sentence: **"Irregularities do not result from adjudication and in that respect are to be distinguished from errors."** (Citing cases from Wyoming and California, and also Hayne on New Trial.)

**"An erroneous judgment** is one rendered according to the course and practice of the courts, but contrary to law, as where it is for one party when it ought to be for the other. * * * An **irregular judgment** is one contrary to the course and practice of the court, as a judgment without service of process" or without disposing of a plea properly entered. Wolf v. Davis, 74 N. C. 597-599.

In the case of Valerius v. Richard, 57 Minn. 443, 59 N. W. 534, the court said:

"An 'irregularity' in the proceedings of the court **is not an error of law, by any means.** Errors in law occur only when there are rulings made on questions of law: and it is very evident that no error of law in giving or refusing instructions can be reviewed, as an 'irregularity' of the court, under the first subdivision." Citing Hayne, New Trial, 29, 100.

Defendant contends, however, that this error was apparent upon judgment roll, and, therefore, even if no specific exception were saved thereto, or if the motion for new trial omitted reference thereto, that the alleged error was available. It is sufficient answer to say that motions and rulings of court thereon do not constitute part of judgment roll. C. O. S. 1921, sec. 688.

In Pennsylvania Co. v. Barton, 130 Ill. App. 573, the court says:

"In Macnamara on Nullities and Irregularities in Law, p. 20, it is said that, 'An irregularity is a formal but a nullity is a substantial defect. * * * One applies chiefly to the manner, the other to the matter or merits of the proceeding.' * * *"

To the same effect, Porter v. Alamocitos Land & Live Stock Co. (N. M.) 256 Pac. 179-185; American Nat. Bank v. Tarpley (N. M.) 250 Pac. 18; Freeman on Judgments (5th Ed.) par. 221; Black on Judgments (2d Ed.) par. 329.

Defendant places chief reliance upon Braden v. Williams, 101 Okla. 11, 222 Pac. 948. In that case there was a motion to quash summons. It was contended that defendant waived his objection by failure to renew

same at subsequent stages. The court in the opinion says:

"The defendant filed his motion for new trial. One of the grounds was, paragraph 1 of the statute, relating to motion for new trial, which is, in substance, irregularity in the proceedings of the court, and abuse of discretion on the part of the court in which defendant was prevented from having a fair trial."

We concede that if paragraph 1 were set out in the motion for new trial in the case at bar, it would preserve the question just as it preserved the question in the Braden Case. The court in the Braden Case was unfortunate in its language. It says that paragraph 1 of the statute was set out in the motion for new trial, and then proceeds to state in substance what paragraph 1 contained. This paragraph speaks for itself and discloses that the full substance of the same was not given by the court in its definition. In the succeeding paragraph the court indicates that irregularities in the proceedings would cover the point, but if the motion for new trial in that case contained paragraph 1, the statement of the court was not only unnecessary, but inexact. This is not a criticism of the court, for the court only purports to quote the "substance" of paragraph 1, and simply fails to quote it in full.

The clear import of the subdivision under view may be the better seen by eliminating irrelevant parts as follows:

"Irregularity in the proceedings of the court or any order of the court by which the party was prevented from having a fair trial."

Note the repetition of the word "court." Also, the result which must follow the "irregularity of the court." It must prevent a fair trial. Likewise, the same result must follow the order complained of—it must prevent a fair trial. Each of these clauses is independent, and while the derelictions comprehended are different in quality, nevertheless, each must result in an unfair trial.

To extend and expand the meaning of the words "irregularity in the proceedings of the court," so as to include any order of court, would reduce the numerous grounds for new trial, intended by law, in a measure, at least, to apprise the opponent, as well as the court, of the nature of attack, and would allow appellant to lie in ambush behind his motion for new trial, complaining only of an undisclosed irregularity alleged to have prevented a fair trial, and, in this court, sweep the entire horizon for reversible errors. At first blush, this might seem to simplify matters and aid an overworked profession, which, for generations, has given time and thought to motions of this kind, but the result of having no orderly procedure is not simplicity, but utter confusion.

Defendant argues that trial court in its decision denying removal was not only wholly erroneous, but also seriously irregular. For almost 20 years, the Supreme Court of the United States and the lower federal courts had held that in a case where plaintiff brought his suit in a federal judicial district, in which neither party resided, the suit was not removable. Ex parte Wisner, 203 U. S. 449; In the Matter of Albert N. Moore, an Infant, 209 U. S. 490. All the cases are reviewed by Judge Campbell (Eastern Judicial District of Oklahoma) in Shawnee National Bank v. M., K. & T. Ry. Co., 175 Fed. 456.

The foregoing cases were overruled January, 1923, in Lee v. C. & O. Ry. Co., 260 U. S. 653, 67 L. Ed. 443, and followed in General Investment Co. v. Lake Shore, 43 Sup. Ct. Rep. 106, 67 L. Ed. 244, so that it is not strange that the trial court in his denial of removal followed such distinguished precedents, nor that defendant in his motion for new trial, filed December, 1920, and before decision in the last-named cases, did not complain of any erroneous order, even in a suit of such importance as would seem to call for a specific reference to a failure to remove, if, in fact, it had been thought of value. We hold that the question of error in the order refusing removal was not presented by defendant's motion for new trial, and on that account is not presented here.

3. **Was the verdict contrary to law, and was it supported by sufficient evidence?** Our consideration of the other assignments leads us to answer the first inquiry in the negative. Upon examination of the evidence, we must, subject to a limitation hereinafter made, answer the latter inquiry in the affirmative.

4. **Was defendant entitled to an instructed verdict?** Plaintiff, a minor, was requested by a captain of National Guards, to go with his company from El Reno to Ft. Sill on an encampment, and to act as assistant mess sergeant on account of absence of regular mess sergeant. The captain made application for transportation for 55 persons, and same was furnished by defendant. The order for transportation by the government was issued in blank, and the number of persons to be transported was filled in by the captain at time of entraining. General order No. 13, provides, among other things, that:

"In order to receive credit for attendance all men present, except cooks, kitchen police, and noncommissioned officers in charge of quarters or camps, and those on sick report, must actually participate in maneuvers, * * * commanders to furnish certificates as to all payrolls, and as to those entitled to pay under provisions of the order, and that no officer or enlisted man should be entitled to pay unless he attends one-half the number of days."

The evidence is clear that plaintiff on day of entraining helped to make purchase of necessary supplies, had them carted to depot, went upon train, put away and took care of supplies, helped to prepare the meal and served same to the soldiers, and passed to and fro for that purpose in the train. The evidence is in some conflict as to plaintiff's dress; the colonel in command testifying for defendant that he had on regulation shirt and trousers, but a civilian cap. Other evidence was to effect that he was dressed in regulation clothes, except certain insignia on his hat. There is no evidence that plaintiff hid himself or took passage in any secret manner or avoided inspection. He testified that he thought he had a perfect right to ride on train as he did ride and thought that his transportation had been arranged for; but that if it had not been, and he had been called upon, he was prepared and would have paid his fare. When the train was either at or near its destination, and the men were either getting off or preparing to get off, the train slowed up and came to a stop, and the plaintiff was on the platform between two cars. The evidence is fairly clear that he was getting ready to leave the coach, when there was an unusual lurch of the train backwards and then forwards, and plaintiff was thrown off his balance, resulting in having his foot caught between the cars or bumpers due to the fact that protection plates or chaffing irons were not on the cars and left a hole through which plaintiff's foot went, and his foot was injured. The railroad company relied upon the captain to furnish his 55 persons. The application showed 55 persons, the ticket showed 55 persons, and the count showed the same. Upon the reverse side of general instructions from the government it is stated under general instruction No. 2 to carriers, paragraph 2:

"In rare instances, where it becomes necessary owing to the unforeseen conditions, to furnish transportation varying from that called for on the face of this request, a notation should be made by the traveler in the following spaces, showing the actual transportation furnished and explaining the variation, and should be signed by him."

And in paragraph 3:

"Transportation furnished as in preceding paragraph must not be in excess of that called for on the face of the request unless the difference is collected from the traveler, and the United States government will not be responsible for any excess caused arising through the violation of these instructions."

The captain of the company was the "traveler," since there was only one ticket issued, and the name of Montgomery is signed to order 13 over the words "signature of traveler." Defendant contends, under these facts, that plaintiff was not a passenger, and that a verdict should have been directed for defendant. With this contention we cannot agree.

Defendant says that plaintiff, not being a member of the guard, was a stranger to contract of carriage. The contract of carriage was not made between the railroad company and members of guard as such. It was simply a contract for transportation of 55 persons to be selected by captain of the company and the fare of these 55 persons was paid. There was no condition attached to these persons. When the train pulled in, conductor said, "Are your 55 persons here?" and commander answered, "Yes." No further remarks were made, no examination was attempted. It is hard for us to understand in such circumstances how the railroad was harmed or how the measure of their duty was lessened by their subsequent discovery that plaintiff was not a full-fledged soldier. If the wearing of a regulation shirt, trousers, etc., was intended to and did deceive anyone, certainly it was not the railroad, who, it seems, got out of this enterprise what it charged. It was more interested in carrying passengers for pay than in enforcing a government regulation made to protect its military uniform.

Defendant contends further that the relation of passenger and carrier arises out of contract. True, but it may be express or implied, and under the authorities the relation begins when a person puts himself in care of carrier, or directly within its control, with intention of becoming a passenger, and is accepted as such by carrier. Can there be doubt that those conditions were present? See Southern Pacific R. Co. v. Schuyler, 227 U. S. 601, 57 L. Ed. 662.

Defendant cites Southern Ry. Co. v. McNabb (Tenn.) 169 S. W. 757; Broyles v. Central of Ga. Ry. Co. (Ala) 52 So. 81; Harmon v. Jensen, 176 Fed. 519; Fitzmaurice v. N. Y., N. H. & H. R. R. Co. (Mass.) 78 N. E. 418; C. & O. v. Mollett (Ky.) 270 S. W. 26; Beard v. International & G. N. R.

Co. (Tex.) 171 S. W. 553; Neyman v. Alabama Great Southern Ry. Co. (Ala.) 55 So. 509; Speaks v. Metropolitan St. Ry. Co. (Mo.) 166 S. W. 864. In these cases there were deliberate attempts to defraud railroad company; to ride without paying fare; to ride on a pass belonging to another; to ride on a train with full knowledge that would-be passenger would not be accepted as such; or to ride as an employee without paying fare by one not an employee. These cases are clearly unlike a case in which the actual fare was paid, and no attempt was made to defraud railroad company out of its fare. And in said cases bad faith was present. In case at bar there was no evidence of bad faith unless it were deducible from a constructive knowledge of the government regulations imputed to plaintiff, when, as a matter of fact, he had no such knowledge. Plaintiff might have had the intention of robbing a bank when he arrived at his destination, but that would not have prevented his making a valid contract for his transportation to Ft. Sill. We hold defendant was not entitled to an instructed verdict.

5. **Defendant complains that plaintiff was allowed to testify that he thought he had a right to become a passenger on this train.** Defendant admits that the weight of authority is against this contention and since we agree with him, we will pass on.

6. This instruction advised jury that if plaintiff in good faith took passage without challenge by defendant, he became a passenger and entitled to the degree of care due to that relationship. This instruction, when considered in light of transportation paid and other circumstances, certainly is not ground for reversal.

7. Instruction No. 3, requested by defendant, advised jury that it was against constitutional provisions of Oklahoma for a railway company to carry plaintiff free. The pertinancy of this instruction is not obvious.

8. Requested instruction No. 2 advised jury that if plaintiff received injuries while on platform of a car while in motion in violation of printed regulations of defendant corporation posted up in a conspicuous place inside of its passenger cars, defendant is not liable. We think this instruction, unexplained. is hardly warranted under our decisions, and perhaps invades the province of the jury. It has been held by this court in case of C., R. I. & P. Ry. Co. v. Grace, 61 Okla. 12, 159 Pac. 1011, that provisions of section 5524, C. O. S. 1921, will not always preclude a recovery to a party who is injured while on platform when train is in motion. The facts in the Grace Case are strikingly similar to the facts in case at bar. In Pruitt v. San Pedro, etc., R. Co. (Cal.) 118 Pac. 223, paragraph 2 of syllabus is as follows:

"Where a passenger, after the announcement of his station and the train has slackened its speed, left his seat in the coach and went on the platform, expecting to alight at the station, the question whether he violated the posted rules of the railroad prohibiting passengers from riding on the platform, so that he could not recover for a personal injury while on the platform, was for the jury."

This case cites Buell v. N. Y. Central R. R. Co., 31 N. Y. 319, 88 Am. Dec. 271, and in the body of opinion in last-named case the court says:

"The statute was intended to prevent the imprudent act of standing or riding on the platform, but not to absolve railroad companies from responsibility for every injury which might happen at that place, when a passenger is passing over it, while justifiably entering or leaving the car."

The following cases hold it a question of fact for jury: Lane v. Spokane Falls & N. R. Co. (Wash.) 57 Pac. 367; Romine v. Evansville, etc., R. R. Co., 24 Ind. App. 230; Wylde v. Northern R. R. Co., 53 N. Y. 156; Thomas v. San Pedro, etc., Ry. Co., 170 Fed. 129; B. & O. Ry. Co. v. Meyers, 62 Fed. 367; Louisville, etc., Ry. Co. v. Stilwell (Ky. App.) 134 S. W. 202.

We think the act of unjustifiably riding on platform is the act at which the statute, section 5524, is leveled.

9. Instruction No. 4. In substance this instruction advises jury that if they shall find plaintiff was a passenger as defined, and while riding on train same gave a sudden jerk forward and backward and plaintiff was thereby thrown backward and his foot caught between platforms of two cars. resulting in injury, and if defendant was guilty of negligence as defined in instructions, and the same was the proximate cause of injury, the verdict would be for plaintiff. This instruction might be subject to criticism if the single act of negligence of defendant in the operation of its train were the whole of plaintiff's complaint, but plaintiff's petition and proof set out two acts of negligence which operated together to produce injury. First, negligent handling of train, and his proof under that head was that the train experienced an unusual jerk, an awful jerk, rough handling; and, second, that chaffing irons over the bumpers were left off permitting plaintiff's foot to come in contact with the bumpers, and his proof on that score was that there were no plates

on the car. Considering this instruction, along with other instructions, we are of opinion that while it is not as clear as it might be, we do not believe that defendant suffered any prejudice therefrom.

This leaves for our final consideration the contention that the verdict is excessive. Plaintiff was 19 years old, a broom-maker, capable of earning $35 per week, but working about half time; had his left foot injured between bumpers of railroad cars August 5, 1920; no contused wounds, no broken bones; fainted at time of injury, but was given a sedative and prompt first aid, and within half hour was taken to United States military hospital, foot X-rayed, bandaged, and treated with iodine; remained in hospital two nights and one day, and discharged as fit for duty, but was not able to walk without cane, and not able to go on active duty. Subsequent X-rays taken and highly contradictory evidence given by medical men as to condition of bones in foot. Plaintiff's witnesses say from examination of X-rays there is marked narrowing of spaces between bones forming the superior portion of arch and a crowding together of the cuboid and scaphoid and the proximal ends of tarsal bones, and that left arch is about one-half inch lower than right, and that this will probably affect use of foot, and that it is probably permanent. On the other hand, there is testimony of defendant's medical men that from examination of X-rays there is nothing abnormal about position of the bones of foot, and nothing indicating a permanent injury or impairment of use; that often there is difference in normal feet. Plaintiff's testimony is to effect that for sometime he was not able to wear a shoe; that foot gave him pain, and that he was not able to work on that account, and especially at his occupation, and that even at date of trial, four or five months after the accident, it was painful, and that he was not able to walk comfortably nor for considerable distance.

There was some contradictory evidence as to condition of the bones and foot as disclosed by an examination of foot itself, one medical man saying that he could discover the foot was not normal, and that the bones were not in correct apposition, and that such would give rise to some impairment, and also some pain, but the amount of impairment was not in anywise estimated. On the other hand, there was evidence to the contrary that the foot was almost if not quite in normal condition, and that nothing appeared from an examination that would indicate either considerable pain or impairment of use.

We must and do assume that the plaintiff's theory is correct, and his testimony supporting same true. It was the duty of the jury to assess in damage the amount of this injury, and if they have not clearly overstepped by rendering such a verdict as will indicate that it is the result of prejudice and passion, rather than the fair consideration of the evidence, it should stand. This has given us considerable trouble. We have gone over the evidence with care, and we are of the opinion that the verdict in this case is excessive.

Under the proof we think a recovery at this time of $12,000 would be fair to plaintiff. For this reason the verdict and judgment are hereby vacated, and a new trial granted unless plaintiff will agree to and file with clerk of this court, within 15 days a remittitur providing that he will accept in full settlement a judgment as of this date in the sum of $12,000.

The judgment of trial court is affirmed upon a remittitur by plaintiff of said judgment and interest in excess of the sum of $12,000; otherwise, the judgment of the trial court is reversed, and the cause remanded for new trial.

TEEHEE, JEFFREY, DIFFENDAFFER, LEACH, and HERR, Commissioners, concur.

By the Court: It is so ordered.